**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION**

| | |
|---|---|
| MICHAEL F. MALONE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>TD AMERITRADE, INC. and TD AMERITRADE CLEARING, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION<br>COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1. Plaintiff Michael F. Malone brings this action on behalf of himself and a class consisting of all persons or entities who have or had an Ameritrade account(s) and were improperly charged transaction fees for the exchange of mutual fund shares for shares of other funds in the same mutual fund family when they had the right to exchange such shares without incurring any fees, including transaction fees, from the earliest time permitted by applicable law to the present.

**THE PARTIES**

2. Plaintiff Michael F. Malone, at all relevant times, was a resident of 2711 Northview Drive, McKinney, TX 75070, and maintained a ROTH IRA Account with TD Ameritrade Clearing, Inc. in which he exchanged both BlackRock and Columbia (merged with RiverSource) mutual funds.

3. Defendant TD Ameritrade, Inc. is a Nebraska corporation with its principal place of business located at 200 South 108th Avenue, Omaha, Nebraska 68154. TD Ameritrade, Inc. is an indirect wholly owned subsidiary of TD Ameritrade Holdings Corporation through its immediate parent TD Ameritrade Online Holdings Corp. TD Ameritrade is an introducing securities broker-dealer and a registered investment advisor.

4. Defendant TD Ameritrade Clearing, Inc. is a Nebraska corporation with its principal place of business located at 200 South 108th Avenue, Omaha, Nebraska 68154. TD Ameritrade, Inc. is also an indirect wholly owned subsidiary of TD Ameritrade Holdings Corporation through its immediate parent TD Ameritrade Online Holdings Corp. TD Ameritrade Clearing, Inc. is a securities broker-dealer that provides trade execution and clearing services for TD Ameritrade, Inc.

5. Defendants TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc. are collectively referred to as "Ameritrade."

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because among other things, a substantial part of the events or omissions giving rise to the claims occurred in this district and additionally, defendants reside in this district pursuant to § 1391(c).

## CLASS ALLEGATIONS

8. Plaintiff seeks to represent a class consisting of all persons or entities who have or had an Ameritrade account and were improperly charged transaction fees for the exchange of mutual fund shares which they owned, for shares of other funds in the same mutual fund family when they had the right to exchange such shares without incurring any fees, including transaction fees, from the earliest time permitted by applicable law to the present.

9. Members of the class are so numerous that joinder of all members is impracticable. On information and belief, members of the class number in the thousands. The precise number of class members are unknown to plaintiff at this time but may be determined through discovery. Class

members may be notified of the pendency of this action by means customarily used in such class actions.

10. Common questions of law and fact exist as to all class members and predominate over questions affecting individual class members. Some of the common legal and factual questions include but are not limited to the following:

> i) Whether Defendants have breached their Client Agreement with Plaintiff and the class;
>
> ii) Whether Defendants have been unjustly enriched as a result of their conduct complained of herein;
>
> iii) Whether Plaintiff and the class has suffered damages and, if so, the proper measure thereof.

11. The claims of Plaintiff are typical of the claims of the class in that Plaintiff was improperly charged a transaction fee for exchanges of the same class of shares of funds within the same family of funds.

12. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class he seeks to represent and he has retained competent counsel experienced in prosecuting class actions. The interests of class members will be fairly and adequately protected by Plaintiff and his counsel.

13. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the class members. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues in this case. Individualized litigation also presents a potential for

inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, judicial economy, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## FACTS

BACKGROUND

14. Plaintiff, at all relevant times, maintained a Roth IRA account at Ameritrade.

15. Plaintiff's Client Agreement with Ameritrade provides that he "will pay commissions, charges, taxes, and other fees applicable to my Account."

16. There are no fees applicable to his account for the exchange of shares at issue here.

17. On or about February 18, 2000, Plaintiff purchased 1,061 BlackRock Global Growth Fund class B shares (symbol: MBGCX) which converted to BlackRock Global Growth Fund class A shares which could be "exchanged" for BlackRock Money Market Portfolio Investor A shares (symbol: PINXX) or other BlackRock Mutual Funds class A shares at no fee, including transaction fees.

18. The BlackRock Global Growth Fund Prospectus, in pertinent part, provides:

> Investor A, Investor B, Investor C shares and institutional shares of the Fund are generally exchangeable for shares of the same class of another BlackRock Fund. You can exchange $1,000 or more of Investor A, Investor B or Investor C shares from one fund into another. [You can exchange less than $1,000 of Investor A, Investor B or Investor C shares if you already have an account in the fund into which you are exchanging.] …
>
> * * *
>
> You may systematically exchange monies from one fund to up to four other funds. You must have a minimum of $10,000 invested in the initial fund, and investments in any additional funds must meet minimum initial investment requirements.

>To exercise the exchange privilege contact your financial adviser, selected securities dealer or other financial intermediary or call the Transfer Agent at 1-800-441-7762.
>
>Although there is currently no limit on the number of exchanges that you can make, the exchange privilege may be modified or terminated at any time in the future.

Prospectus at 30.

19. In or about 2006, Plaintiff transferred the above BlackRock shares into his Roth IRA account at Ameritrade.

20. On July 26, 2007, Plaintiff purchased 1,693.937 RiverSource Emerging Markets Opportunity Fund class A shares (symbol IDEAX) which could be "exchanged" for other RiverSource Fund (subsequently merged with Columbia Funds) class A shares at no fee, including transaction fees.

21. On May 11, 2010, Plaintiff purchased 32,979.53 RiverSource Cash Management Fund class A shares (symbol: IDSXX) which could be "exchanged" for other RiverSource Fund (subsequently merged with Columbia Funds) class A shares at no fee, including transaction fees.

22. The RiverSource Emerging Markets Fund (subsequently merged with Columbia Funds) Prospectus, in pertinent part, provides:

>Generally, you may exchange your fund shares for shares of the same class of any other publicly offered RiverSource fund without a sales charge. Exchanges into RiverSource Tax-Exempt Money Market Fund may be made only from class A shares.
>
>\* \* \*
>
>Other exchange policies:
>
>° Exchanges must be made into the same class of shares of the new fund.

Prospectus at S.14-15.

23. On June 25, 2010 Plaintiff transferred the above 1,693.937 RiverSource Emerging Markets Fund class A shares (pending re-registration) and 32,979.53 RiverSource Cash Management Fund class A shares (pending re-registration) into his Roth IRA account at Ameritrade.

24. Ameritrade, or a subsidiary thereof, has a selling agreement with BlackRock Investments, LLC, the underwriter and/or distributor for the various BlackRock funds Ameritrade offers to its clients.  Pursuant to the selling agreement with BlackRock Investments, LLC, Ameritrade agreed not to charge investors a fee for the exchange of shares for the same class of shares in another BlackRock fund.  Ameritrade receives remuneration from BlackRock based on the total net asset value (NAV) of BlackRock fund investments held by Ameritrade's clients.

25. Ameritrade, or a subsidiary thereof, has a selling agreement with Columbia Management Investment Distributors, Inc. (and also formerly with RiverSource Fund Distributors, Inc.) the underwriter and/or distributor for the various Columbia funds (and former RiverSource funds) Ameritrade offers to its clients.  Pursuant to the selling agreement with Columbia Management Investment Distributors, Inc. (and formerly with RiverSource Fund Distributors, Inc.), Ameritrade agreed not to charge investors a fee for the exchange of shares for the same class of shares in another Columbia fund (and RiverSource fund).  Ameritrade receives remuneration from Columbia Management Investment Distributors, Inc. (and also formerly with RiverSource Fund Distributors, Inc.) based on the total net asset value (NAV) of Columbia fund (and former RiverSource fund) investments held by Ameritrade's clients.

26. Ameritrade, or a subsidiary thereof, also has selling agreements with the respective underwriters and/or distributors for the various funds it offers to its clients.  Pursuant to its selling agreements with those distributors, Ameritrade agreed not to charge investors a fee for the exchange of the same class of shares of other funds in the same mutual fund family.  Ameritrade receives remuneration from the respective underwriters and/or distributors for the various funds it offers to its

clients based on the total net asset value (NAV) of the investments held in the respective funds held by Ameritrade's clients.

27.     Plaintiff had numerous conversations with Ameritrade's mutual fund department which confirmed that there would be no fees, including transaction fees, for exchanges within the respective BlackRock and Columbia Mutual/Money Market Fund class/Investor A shares. Plaintiff was also advised that said conversations were being recorded by Ameritrade.

AMERITRADE'S IMPROPER TRANSACTION FEES FOR EXCHANGES

28.     Contrary to the respective BlackRock and Columbia (formerly RiverSource) prospectuses, selling agreements and Ameritrade's representations, Ameritrade has systematically and improperly charged Plaintiff transaction fees every time he exchanged his BlackRock and Columbia Mutual/Money Market Fund class/Investor A shares for other respective BlackRock and Columbia Mutual/Money Market Fund class/Investor A shares. Additionally, the improper fee charged for exchanges is over twice the amount charged for other stock transactions.

29.     The following table sets forth the funds exchanged for which Plaintiff has been improperly charged transaction fees to date:

| DATE | FUNDS EXCHANGED | TRANSACTION FEE |
| --- | --- | --- |
| 03/02/11 | 3,000 IDSXX[1] exchanged for 265.018 CTCAX[2] | $ 49.99 |
| 08/05/11 | 6,000 IDSXX exchanged for 586.51 CTCAX | $ 17.99 |
| 08/05/11 | 6,000 IDSXX exchanged for 279.851 EENAX[3] | $ 17.99 |
| 08/11/11 | 3,000 IDSXX exchanged for 149.85 EENAX | $ 17.99 |
| 11/21/11 | 3,000 IDSXX exchanged for 308.96 CTCAX | $ 17.99 |
| 11/08/12 | 5,000 IDSXX exchanged for 477.099 CTCAX | $ 17.99 |
| 12/08/12 | 5,000 IDSXX exchanged for 465.116 CTCAX | $ 17.99 |
| 02/26/13 | 5,000 IDSXX exchanged for 436.681 CTCAX | $ 17.99 |
| 02/03/14 | 3,000 PINXX exchanged for 217.391 BROAX[4] | $ 17.99 |
| 02/04/14 | 5,000 IDSXX exchanged for 320.102 CTCAX | $ 17.99 |
| 04/04/14 | 5,000 PINXX exchanged for 345.304 BROAX | $ 17.99 |
| 04/07/14 | 5,000 IDSXX exchanged for 307.125 CTCAX | $ 17.99 |
| 10/07/14 | 5,000 PINXX exchanged for 330.907 BACAX[5] | $ 17.99 |
| 10/09/14 | 1,500 PINXX exchanged for 102.041 BACAX | $ 17.99 |
| 10/13/14 | 10,000 IDSXX exchanged for 598.802 CTCAX | $ 17.99 |

| | | |
|---|---|---|
| 10/14/14 | 1,000 IDSXX exchanged for 60.753 CTCAX | $ 17.99 |
| 10/16/14 | 1,000 IDSXX exchanged for 60.241 CTCAX | $ 17.99 |
| 11/28/14 | 6,500 PINXX exchanged for 481.481 BACAX | $ 17.99 |
| 12/02/14 | 2,500 IDSXX exchanged for 133.333 CTCAX | $ 17.99 |
| 12/15/14 | 5,000 IDSXX exchanged for 284.9 CTCAX | $ 17.99 |
| 01/05/15 | 5,000 PINXX exchanged for 168.526 BACAX | $ 17.99 |
| 01/06/15 | 5,000 IDSXX exchanged for 282.646 CTCAX | $ 17.99 |
| | **Total:** | **$ 427.78** |

[1] Columbia Money Market Fund class A shares
[2] Columbia Global Technology Growth Fund class A shares
[3] Columbia Global Energy & Natural Resources Fund class A shares
[4] BlackRock Global Opportunities Investor A Fund shares
[5] BlackRock All-Cap Engy & Res Investor A Fund shares

30. To date, Ameritrade has improperly charged Plaintiff $427.78 in transaction fees and will continue to do so unless prohibited therefrom.

AMERITRADE'S MULTIPLE ADMISSIONS

31. Plaintiff has had telephone conversations with Ameritrade's mutual fund department, in which they confirmed that there would be no fees, including transaction fees, for exchanges within the respective BlackRock and Columbia family of mutual funds and that prior transaction fees would be reversed, also which never occurred. In at least one of the conversations that Ameritrade stated that the charging of transaction fees on exchange transactions could be a much larger problem for Ameritrade than just the problem with Plaintiff's account.

32. On or about December 10, 2014, Plaintiff received a telephone call from Chris Gooleck (spelled phonetically) of Ameritrade's Office of the President. Plaintiff requested that Gooleck listen to Ameritrade's prior recordings of his conversations with Ameritrade mutual fund department personnel. Thereafter, Gooleck contacted Plaintiff after listening to the conversation and admitted that Ameritrade representatives had assured Plaintiff there would be no fees for the exchanges involved and that prior charges would be reversed. He further stated that the representations were erroneous and contrary to the policy of Ameritrade. He refused to refund all of the improper charges. Thereafter, this action was commenced

## FIRST CLAIM FOR RELIEF
## (DIRECT BREACH OF CONTRACT)

33. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 42.

34. Plaintiff and each member of the class entered into a Client Agreement with Defendants.

35. The Client Agreement provides that Plaintiff and each member of the class "will pay commissions, charges, taxes, and other fees applicable to my Account."

36. There are no fees applicable to the Account of Plaintiff and each member of the class for exchanges of class A, B or C share for the same class shares of another fund in the same mutual fund family.

37. Defendants have breached the Client Agreement in improperly charging Plaintiff and the other members of the class a transaction fee for such exchanges.

38. Defendants have also breached its Selling Agreement in improperly charging Plaintiff and the other members of the class a transaction fee for such exchanges.

39. Plaintiff and the other member of the class have suffered damages as a result of Defendants' breaches of the Client Agreement and Selling Agreement.

40. Plaintiff and the other members of the class will continue to suffer damages if Defendants are not enjoined from continuing to improperly charge such transaction fees.

## SECOND CLAIM FOR RELIEF
## (THIRD PARTY BENEFICIARY-BREACH OF CONTRACT)

41. Plaintiff incorporates by reference paragraphs 1 through 40.

42. Ameritrade or a subsidiary thereof had a valid and binding selling agreement with the various underwriters and/or distributors of the various mutual funds if offered to its clients.

43. Ameritrade is paid fees by the various mutual funds that it offers to its clients.

44. Pursuant to the various respective selling agreements, Ameritrade was not to charge a fee for exchanges of shares for the same class of shares in the same mutual fund family.

45. Plaintiff and the other members of the class are a third-party beneficiary of the selling agreement between Ameritrade and the various mutual fund underwriters and/or distributors.

46. Ameritrade breached its selling agreement with the various mutual fund underwriters and/or distributors in charging transaction fees for exchanges of shares for the same class of shares in the same mutual fund family.

47. Plaintiff and the other members of the class have been damaged as a result of Ameritrade's breach of contract with the various mutual fund underwriters and/or distributors.

### THIRD CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

48. Plaintiff incorporates by reference paragraphs 1 through 47.

49. Plaintiff relied upon defendant's misrepresentations that there would be no fees for the exchange of mutual fund shares in the same family of mutual funds.

50. In reliance upon such representation, Plaintiff entered into exchange transactions, and was damaged thereby when fees were charged.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the class prays for judgment as follows:

i) In favor of Plaintiff and the class for the amount of damages sustained as a result of the conduct complained of;

ii) Enjoining defendants from continuing the conduct complained of;

      iii)   Certifying this Action as a class Action and appointing Plaintiff as class Representative and his Counsel as class Counsel;

      iv)   Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

      v)   Granting such other and further relief as the Court deems just and proper.

Dated: August 16, 2016

**KENDALL LAW GROUP, PLLC**

*/s/ Joe Kendall*

_____

Joe Kendall
State Bar No. 11260700
Jamie J. McKey
State Bar No. 24045262
3232 McKinney Ave, Suite 700,
Dallas, TX 75204
(214) 744-3000
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

-and-

**BRAGAR EAGEL & SQUIRE, P.C.**
Raymond A. Bragar
885 Third Avenue, Suite 3040
New York, NY 10022
(212) 308-5858
bragar@bespc.com

-and-

**RABIN & PECKEL LLP**
I. Stephen Rabin
885 Third Avenue, Suite 3040
New York, NY 10022
(212) 880-3722
srabin@rabinpeckel.com

*Attorneys for Plaintiff and the Class*